THE EMPIRE CREAM SEPARATOR COMPANY v. THE DE
LAVAL DAIRY SUPPLY COMPANY.

Argued June 8, 1906—Decided September 19, 1906.

1. A count which charges that the defendant spoke or published cer-
tain words concerning the plaintiff, and that he spoke them mean-
ing that the plaintiff was guilty of certain specified fraudulent
conduct, is within section 106 of the act of 1903 (*Pamph. L., p.*
568), which permits a pleader to aver that the words were used
in a defamatory sense, specifying such defamatory sense, without
a prefatory averment to show how such words were used in that
sense.
2. The general allegation that words were maliciously spoken or
published is sufficient, although the words might otherwise be
privileged.
3. A private corporation may be sued for slander.
4. There was no need to allege special damages, as in both counts
the language imputed was actionable *per se.*

On demurrer to declaration.

The declaration in this case contains two counts, one for
libel and the other for slander. There is a demurrer to each
of the counts.

The first count charges that the plaintiff was manufactur-
ing and selling cream separators, and that the defendant
falsely and maliciously published a defamatory libel as fol-
lows:

"To traveling and supervising representatives and agents:
It may be of interest and business use to you to know what
the Empire people [meaning the plaintiff] are proposing to
do in a separator way. All our reports indicate that they
[meaning the plaintiff] have had a very poor season thus far,
and that their [meaning the plaintiff's] trade has fallen off
fully half in most sections. Now we learn that they [mean-
ing the plaintiff] have decided to abandon their present type
of bowl construction, and have already made up the first lot
of machines of a modified 'disc' type of construction, going
as far in this direction as they dare toward an infringement
of the De Laval patents. This new machine [meaning the

machine of the plaintiff] will not be placed on the market, of course, until they [meaning the plaintiff] have cleaned up their stock of the present style, which is said to be very large, there being some 5,000 machines in their works, stores, beside distributing stocks scattered across the country. They [meaning the plaintiff] are said to be striving hard now to unload these machines onto agents and dealers without restriction as to price, so as to be free to put out the newer style. This is being accomplished so slowly, though, that their shop force has been very much reduced, and the shops have been closed down altogether several alternating weeks, which plan will likely be continued during the summer. It will certainly be of interest to their [meaning the plaintiff's] agents and prospective purchasers of their machines for use to learn that they are having unloaded onto them a type of machine that is being abandoned by the manufacturers as inferior and too poor to remain in the separator race. There is no doubt of what is planned in this respect, and you may assert it positively when there is occasion to do so."

This is followed by the words: "Meaning thereby that the plaintiff, believing the cream separators manufactured by it to be of defective and improper construction and type, and of inferior workmanship and design, deceitfully and fraudulently induced its agents and dealers to purchase such machines upon the false representation that they were of proper construction and type and of proper workmanship; that the plaintiff was fraudulently concealing from such agents and dealers that it was about to abandon the manufacture of such machines, and was about to substitute a machine of different type and construction."

Other meanings are attributed to the alleged defamatory words, which need not be set out *in extenso*.

Before Justices FORT, GARRETSON and REED.

For the plaintiff, *Riker & Riker*.

For the defendant, *Robert H. McCarter*.

The opinion of the court was delivered by

REED, J. It is perceived that the innuendo declares that the meaning of the defendant in publishing the alleged defamatory words was that the plaintiff, believing its machines to be defective, fraudulently induced its agents and dealers to buy them upon the false representation that they were of proper construction, and that the plaintiff fraudulently concealed from its agents and dealers that it was about to abandon the manufacture of these machines and substitute another type of machine. The purport of this innuendo is that the plaintiff lied to its agents and purchasers for the purpose of unloading upon them inferior machines.

It cannot be denied that the written publication of a charge of this kind is libelous *per se.* If, therefore, the count is within section 106 of the act of 1903 (*Pamph. L., p.* 568) it contains a charge of libel. This section permits the plaintiff to aver that the words were used in a defamatory sense, specifying such defamatory sense, without a prefatory averment to show how such words were used in that sense.

The counsel for the demurrant, however, insists that the words actually published are not in themselves libelous; and that the pleader has not availed himself of the privilege conferred by section 106 by averring that the words were used in a defamatory sense, specifying such sense. This view is not tenable.

The purpose of the statute is pointed out in the case of *Hand* v. *Winton,* 9 *Vroom* 122. It was to enable the pleader to impute any meaning he desired to the published words. Such meaning can be challenged only by denial of the libel. Upon demurrer to the declaration the imputed meaning of the words complained of is admitted by the demurrant.

The pleader in the present case charged that the defendant published a certain defamatory libel, setting it out. He then charges that defendant meant by such words to charge that the plaintiff had been guilty of such conduct as, if falsely charged and published in writing, would be libelous.

It would be hypercritical to say that a charge that certain

words were used in a defamatory sense was within the statute, and a charge that certain words were published by the defendant, by which he meant to charge certain words which were libelous, was aside from the statute. In both instances the words, as interpreted by the pleader, are charged to be defamatory—that is, used in a defamatory specified sense, and the sense is specified.

Indeed, upon examining the case of *Feder* v. *Herrick*, 14 *Vroom* 24, the declaration charged that the defendant did publish a certain defamatory and libelous matter, setting out the matter and the meaning thereof, without otherwise charging that the matter was used in a defamatory sense. On demurrer the declaration was held sufficient.

It is also observed in this case that the meaning attributed to the alleged defamatory article is to charge personal misconduct, and not merely a slander of the character of the plaintiff's goods.

We think, therefore, the count charging the libelous publication is libelous *per se,* and requires no statement of special damages to support the action.

In regard to the ground taken by the demurrer that the publication was privileged because made to its own employes, and that there was no charge of express malice on the part of the defendant in uttering this alleged libel, we think this point is met by the express charge of malice in the publication of the alleged libelous article. *Andrew* v. *Deshler,* 14 *Vroom* 16, 21.

Upon the demurrer to the first count there should be judgment for the plaintiff.

The second count of the declaration sets out facts similar to the first, with the single feature of difference that in the first the defamatory words are alleged to have been published, while in the second they are alleged to have been uttered in a certain discourse.

The same points made in regard to the insufficiency of the first count are repeated as the grounds for demurrer to the second count. An additional ground for demurrer is that

there is no cause for an action for slander, because a corporation cannot be guilty of slander.

It is settled in this state that a corporation may be guilty of libel, and conceding the liability of corporations for defamatory words written by its officers or agents, it is impossible to conceive on what ground immunity can be claimed for it for defamatory words spoken by its officers or agents.

Another ground upon which the demurrer to the second count is placed is that the alleged defamatory matter set forth in the count is not actionable *per se,* therefore no cause for action is shown, because no special damage is alleged. I have already remarked that the cause for action set forth in the first count being for libel, the allegation of special damages was not essential.

If the words spoken are also slanderous *per se,* then no special damages need be alleged to support the second count.

The charge seems to be clearly that the defendant imputed to plaintiff fraudulent conduct in the conduct of its business.

Language which imputes to one fraud or want of integrity in his business is actionable *per se.* Any charge of dishonesty against a party in connection with his business, whereby his character in such business may be injuriously affected, is actionable.

The cases upon this point are collected in *25 Cyc. L. & Pro.* 342.

There was no need of alleging special damages to support the count against a demurrer.

Whether there was a sufficient allegation of special damages, therefore, need not be discussed.

It was pressed upon the argument that both counts were defective because it was charged that the defendant published the alleged defamatory words and it was not charged that the defendant by its agents published or spoke the alleged defamatory words. This point we have not considered, as it was not one of the grounds for demurrer.

There should be judgment for the plaintiff on the demurrer.